IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KEENAN COFIELD**, *et al.*, | * | |
| **Plaintiffs**, | * | |
| v. | * | **CIVIL NO. JKB-23-1795** |
| **PASSPORT MOTORS HOLDINGS, INC.,** *et al.*, | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This matter was initially filed in the Circuit Court for Baltimore City ("State Court") on April 25, 2022, by Plaintiffs Keenan Cofield ("Cofield"), Laverne Thompson, Kayla Nedd, Luluk Novi Fatwami, Kevin Cofield, Orian Cofield, and Arviette Cofield (collectively, "Plaintiffs").[1] (*See* Notice of Removal, ECF No. 1; State Court Case No. 24-C-22-002016.)

Thereafter, on September 28, 2022, Plaintiff Keenan Cofield filed a Chapter 7 voluntary petition for bankruptcy in the United States Bankruptcy Court for the District of Maryland ("Bankruptcy Court Action"). (*See In re Keenan Kester Cofield*, Case No. 22-15317-DER, ECF No. 1.) On April 13, 2023, Cofield filed a "Notice to Stay" the action in the State Court, asserting that "this matter must be stayed in part to allow the bankruptcy trustee," Patricia Jefferson ("Trustee"), "to intervene" as the "real party in interest as trustee." (*See* State Court Notice to Stay, ECF No. 1-1.) The State Court ordered the action stayed and deferred proceedings to the Bankruptcy Court "in accordance with Section 362 of Title 11 of the United States Code" on May

---

[1] Although the Amended Complaint lists several Plaintiffs with the last name "Cofield," the claims that are the discussed in this Memorandum Opinion pertain to Plaintiff Keenan Cofield. The Court shall therefore use the name "Cofield" to refer solely to Plaintiff Keenan Cofield.

1, 2023 ("Stay Order"). (*See* State Court Stay Order, ECF No. 1-2.) On the same day, Cofield filed two motions for summary judgment in the State Court Action. (*See* ECF Nos. 7, 8.)

Subsequently, on May 8, 2023, Plaintiffs filed an Amended Complaint in the State Court. (*See* Notice of Removal ¶ 2.) Among other things, the Amended Complaint added Twitter, Inc. ("Twitter")[2] as a Defendant in the State Court Action, alleging that Twitter violated Cofield's rights under the Sherman Antitrust Act, Section 5(a) of the FTC Act, the Lanham Act, 15 U.S.C. § 44, § 45(a), § 53(b), § 1114, § 1117(a), § 1121, §1125, § 1607(c), § 1693(c), 18 U.S.C. § 1961 et seq., 28 U.S.C. §§ 1331, 1338, in addition to other, unnamed consumer protection statutes. (*See* Am. Compl. at 34–42, ECF No. 5.) Despite the Stay Order, and without explanation as to its impact on the proceedings, the State Court issued summons to the parties named for the first time in the Amended Complaint, including Twitter. (*See* Summonses, ECF No. 1-3.) Twitter states that it was served the Amended Complaint on June 2, 2023. (*See* ECF No. 23 ¶ 6; Notice of Removal ¶ 3 (misstating the date of service as July 2, 2023).)

On July 5, 2023, Twitter removed the action to this Court, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446.[3] Several days later, on July 10, 2023, the Trustee filed a "Notice Of Abandonment," proposing to abandon Cofield's estate's interest "in all pending litigation," including this action. (*See* Case No. 22-15317-DER, ECF No. 68.) The Trustee stated that, "[p]ursuant to [her] investigation, [Cofield] is a serial litigant" and the pending litigation "is of inconsequential, if any, value." (*Id.* at 1.) As of the time of this writing, the Bankruptcy Court has not acted on the Notice of Abandonment.

---

[2] X Corp. is the successor in interest to Twitter, Inc. (*See* ECF No. 23.) Moreover, this Defendant informed the Court in its Response to the Court's Show Cause Order (ECF No. 25) that since the time of the Court's Order, "Twitter, the online social media platform, has been re-branded as 'X.'" (ECF No. 29 at 1 n.2.) However, for ease of understanding, this Memorandum shall continue to refer to Defendant as "Twitter."

[3] Twitter correctly states: "Thirty calendar days after June 2, 2023 is July 2, 2023, which fell on a Sunday. By order of this Court dated June 14, 2023, July 3, 2023 was treated as a 'legal holiday' for purposes of Federal Rule of Civil Procedure 6." (ECF No. 24 at 2 n.1.)

On July 19, 2023, Twitter filed its "Motion for Stay and Extension of Time," ("Motion to Stay"), "requesting that the Court issue an order staying the instant matter pending resolution of the Notice of Abandonment in the United States Bankruptcy Court and extending Defendant's time to file a responsive pleading and/or dispositive motion to Plaintiffs' Amended Complaint, and opposition to Plaintiffs' motions for summary judgment." (Mot. Stay, ECF No. 23.) Moreover, Twitter requested that this Court "clarify the stay of the instant action." (*Id.* ¶ 10.) On July 20, 2023, this Court issued a Show Cause Order noting that this action was under the Stay Order issued by the State Court at the time of Twitter's removal and directing Twitter to show cause as to "[w]hy [the Motion to Stay] should not be denied as void *ab initio*," pursuant to Fed. R. Br. P. 9027(a)(2) and 11 U.S.C. § 362, *inter alia*.

Cofield then filed a Motion for Voluntary Dismissal of Twitter and a Motion to Remand the case to the State Court. (ECF Nos. 27, 28.)

On July 28, 2023, Twitter filed its response (the "Response") to the Show Cause Order. (ECF No. 29.) In the Response, Twitter explained its belief that Fed. R. Br. P. 9027(a)(3), rather than 9027(a)(2), applied to this action, as the claims asserted against Twitter were not pending until after Cofield filed for bankruptcy. (ECF No. 29 at 3.) Rule 9027(a) states, in pertinent part:

> (a) Notice of Removal. . . .
>
> (2) *Time for Filing; Civil Action Initiated Before Commencement of the Case Under the Code.* If the claim or cause of action in a civil action is pending when a case under the Code is commenced, a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under §362 of the Code, or (C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.
>
> (3) *Time for filing; civil action initiated after commencement of the case under the Code.* If a claim or cause of action is asserted in another court after the commencement of a case under the Code, a notice of removal may be filed with the clerk only within the shorter of (A) 30 days after receipt, through service or

3

otherwise, of a copy of the initial pleading setting forth the claim or cause of action sought to be removed, or (B) 30 days after receipt of the summons if the initial pleading has been filed with the court but not served with the summons.

Fed. R. Br. P. 9027(a)(2), (3). Therefore, it is Twitter's understanding that it was required to remove this action within thirty days of receipt or otherwise waive its right to remove. (*See* ECF No. 29 at 3–6.)

However, the timeliness of removal is of no moment at this juncture, as this Court shall dismiss the Amended Complaint on its own motion. This Court "is authorized to sua sponte dismiss complaints that fail to state a claim under 28 U.S.C. § 1915(e)(2)." *Emrit v. Md. State Bar Ass'n*, Civ. No. JKB-15-2548, 2015 WL 11027774, at *2 (D. Md. Sept. 10, 2015), *aff'd*, 624 F. App'x 115 (4th Cir. 2015). Having reviewed the claims lodged in the Amended Complaint, this Court concludes that Plaintiffs' claims are without merit. (*See* Am. Compl.)

The Amended Complaint is far from a model of clarity. In this 259-page document, it is neither clear what factual basis Plaintiffs have for the claims asserted, nor is it clear what claims are actually asserted. In fact, the Amended Complaint contains roughly twenty-five stated claims against roughly twenty-six named Defendants, most of which appear to be entirely unrelated. (*See generally* Am. Compl.) For example, the Amended Complaint begins with allegations concerning the alleged brake failure of a Mercedez Benz and injuries incurred therefrom (*see id.* at 1–23), then asserts claims based on alleged Salmonella poisoning against an entirely distinct set of Defendants (*see* Am. Compl. at 23–26), and, within the same action, also lodges claims against the United States Postal Service alleging that a package containing an Apple iPhone was "given to a thief" (*id.* at 26). These are only several of the many distinct claims and allegations asserted by Plaintiffs in the single Amended Complaint. (*See generally id.*)

The allegations in this Amended Complaint are asserted with virtually no relevant factual predicate. Using his allegations against Twitter as an example, Cofield alleges that Twitter

4

infringed upon and/or allowed other parties to infringe upon his severally listed names—"Dr. Keenan Cofield, Dr. Keenan Kester Cofield, also Sir. [sic] Lord Keenan Kester Cofield"—which he claims "are properly and/or legally organized and recognized as a protected member of society, class, person and entity in the State of Maryland to federally registered in real and common law" and are "names and marks in commerce to registered domain names and business names with EIN's [sic], in connection with virtually all of its products and services, including search engines, and connections to and with the internet and world wide web." (*Id.* at 34.) Based on this, Cofield asserts that Twitter violated his "intellectual property rights when they allowed some unknown person to create a FAKE Twitter account that is libelous, false advertisement, on its website with defamatory false content." (*Id.* at 38.) The allegations against Twitter continue for several pages asserting claims under various federal laws, all of which appear to center around the above-described allegations. (*See id.* at 38–44.) Notably, Cofield does not identify any registration of these names as trademarked or copyrighted, nor does he identify any of the alleged "business names" or "products and services" connected with these names. The claims asserted in the Amended Complaint appear to be frivolous and without merit.

As another example, Cofield appears to assert claims for strict product liability, negligence, breach of warranty, breach of contract, and negligence per se on behalf of Plaintiff Kayla Nedd contracting "Salmonella and/or Food Poisoning." (*Id.* at 23.) Cofield states: "Plaintiff Kayla Nedd, contacted me Dr. Keenan Cofield about what she had ate . . . . I took Kayla to the ER." (*Id.* at 24.) The Amended Complaint further states that Nedd ate the allegedly contaminated food on April 2, 2022, and that the food "was fairly uncooked contaminated beef that had been exposed, for many days or hours before it was cooked or prepared." (*Id.*) However, it is unstated who cooked the food or where it was consumed, only that "[t]he food product at issue in this suit was

designed, manufactured, constructed, marketed prepared, and cooked and/or distributed by and through the Texas Roadhouse Defendants and other agents on their behalf." (Am. Compl. at 25.) Texas Roadhouse is a chain restaurant with "more than 580 locations in 49 states and 22 international locations in nine foreign countries." *Texas Roadhouse Fact Sheet*, https://www.texasroadhouse.com/sites/default/files/2021-10/texas-roadhouse-fact-sheet.pdf. Although one particular Texas Roadhouse location is named as a Defendant in this matter, the allegations in the Amended Complaint do not state which location Nedd attended, what she ate, or how Plaintiffs know that the food was exposed "for many days or hours before it was cooked." (Am. Compl. at 24.) Despite stating that Defendants breached various duties and that those breaches were "the proximate cause of Plaintiff's [sic] Nedd injuries," there is no further factual predicate stated for proximate causation. (*Id.* at 26.)

This Court also takes notice of the findings and observations made by other federal courts before which Cofield has appeared. Cofield has a decades-long documented history of filing meritless litigation around this country. More than thirty years ago, the Eleventh Circuit described Cofield as "a con-artist who [seeks] to use the legal system to extort settlements from unsuspecting parties." *Cofield v. Alabama Pub. Serv. Comm'n*, 936 F.2d 512, 516 (11th Cir. 1991). Shortly thereafter, the Sixth Circuit affirmed Cofield's conviction for wire fraud relating to a scam lawsuit, noting he "admitted to having filed 150–200 similar lawsuits, 95% of which were scams for profit." *United States v. Cofield*, 960 F.2d 150 (6th Cir. 1992). In 2014, one district court described Cofield as a "recreational litigant," defined to mean one "who engages in litigation as sport and files numerous submissions with little regard for substantive law or court rules." *Cofield v. United States*, No. 14-2637 RMB, 2014 WL 1745018, at *1 (D.N.J. Apr. 30, 2014) (citations and internal quotation marks omitted). That court determined that "prior to initiating" the case before it,

Cofield had "already commenced *one hundred and fifteen* civil matters in various federal district courts, including the United States District Courts for the Western and Eastern Districts of Virginia, Southern and Northern Districts of Alabama, District of Maryland, District of Columbia, Eastern District of Kentucky, Eastern District of Tennessee, Northern District of Florida, District of Kansas, District of Colorado, Northern District of Georgia, Eastern District of North Carolina, Southern District of New York, Northern District of Ohio, and Middle District of Pennsylvania." *Id.* (emphasis in original). In addition, the district court noted that Cofield "filed over twenty appellate actions with the United States Courts of Appeals for the Fourth, Sixth, Eleventh and Federal Circuits and several actions with the United States Supreme Court." *Id.* This district court concluded that Cofield "cannot keep litigating his frivolous claims." *Id.* at *2.

Further, Cofield was recently placed under a pre-filing injunction in a case in this district, *Lacks v. Thermo Fisher Scientific, Inc.*, Case No. 21-2524-DLB. (*See* Case No. 21-2524-DLB, ECF No. 65.) In *Lacks*, the district court determined that Cofield, a non-party who sought to intervene in the case, "attack[ed] the plaintiff" with "incendiary language" and that his various filings "serve[d] only to impede the progress of the litigation, harass the parties, and burden the Court and litigants with having to respond to baseless requests." (*Id.* at 3.)

As noted, Court is authorized to *sua sponte* dismiss complaints that fail to state claims under 28 U.S.C. § 1915(e)(2). *See Emrit*, 2015 WL 11027774, at *2. "A district court may sua sponte dismiss a complaint for failure to state a claim, and where the face of a complaint plainly fails to state a claim for relief, the district court has no discretion but to dismiss it." *Nix v. NASA Fed. Credit Union*, 200 F. Supp. 3d 578, 586 (D. Md. 2016)

Federal Rule of Civil Procedure 12(b)(6) is implicated when a plaintiff fails to state a plausible claim for relief. In considering a dismissal for failure to state a claim, the court must

7

view all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

While federal courts must liberally construe a *pro se* litigant's claims, this requirement "does not transform the court into an advocate[.]" *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012). The Fourth Circuit has noted that while district courts may require "special judicial solicitude," "a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)).

The claims in this case are exactly those types of "obscure or extravagant claims" which defy any effort to unravel them. *Id.* The Amended Complaint is mostly incomprehensible, such that the Court faces substantial difficulty ascertaining the particular claims Plaintiffs assert and the Defendants against whom Plaintiffs assert those claims. As far as the undersigned can tell, there is no factual predicate for the claims asserted in this 259-page Amended Complaint. This Court reminds Plaintiffs that "'[j]udges are not like pigs, hunting for truffles buried in briefs.'" *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 42 F.4th 300, 315 (4th Cir. 2022) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Under such circumstances, "principles of judicial economy and common sense counsel in favor of dismissing

all claims and terminating this fruitless litigation," rather than addressing the several motions pending before this Court (*see* ECF Nos. 7, 8, 9, 21, 23, 27, 28). *Parker v. Am. Brokers Conduit*, 179 F. Supp. 3d 509, 521 (D. Md. 2016).

For the reasons stated above, a separate Order shall issue dismissing this action, without prejudice.

DATED this ___9___ day of August, 2023.

BY THE COURT:

_____
James K. Bredar
Chief Judge
